## Kearns, Appellant, *v.* Carnegie Steel Company.

*Negligence—Master and servant—Dangerous employment—Duty to instruct.*

1. In an action to recover damages for personal injuries, the case is for the jury where it appears that the plaintiff, who had been employed in defendant's rolling mill for two years as a "spell hand" to relieve at intervals the operator of a hydraulic lever which turned over the steel billets before they entered the rolls, had been directed by the foreman to go down into a dark pit beside the machine, in which he had never been before, to assist in making a change in the rolls; that upon plaintiff's saying "I don't know anything about it, you had better come down with me," the foreman had said "You had better go down, I will tell you what to do when you go down," and that while he was in the pit, working by the light of a torch held in his hand, and under the surveillance of the foreman, who assured him that he was all right, the latter gave a signal to another operator to start the crane, and as a result the plaintiff was carried up by the weight upon which he was, and was knocked off and pinioned between two iron beams.

2. It is the duty of an employer not only to instruct an employee, ignorant of the dangers incident to his work by reason of age, inexperience, or other cause, but also to point out to him how those dangers may be avoided.

Argued Nov. 1, 1910. Appeal, No. 204, Oct. T., 1910, by plaintiffs, from order of C. P. No. 3, Allegheny Co., Nov. T., 1905, No. 714, refusing to take off nonsuit in case of Anthony J. Kearns, a minor, by his father and next friend, Martin Kearns, and Martin Kearns v. Carnegie Steel Company. Before BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Trespass to recover damages for personal injuries to a minor nineteen years old. Before DAVIS, J.

The facts appear in the opinion of the Supreme Court.

*Error assigned* was in refusing to take off nonsuit.

*Geo. M. Harton*, with him *Jno. L. High*, for appellants.

*David A. Reed*, of *Reed, Smith, Shaw & Beal*, for appellee.

OPINION BY MR. JUSTICE MESTREZAT, January 3, 1911:

We are all of opinion that this case was for the jury, and that the learned court erred in directing a nonsuit.

Anthony J. Kearns, the minor plaintiff, was and had been for two years prior to the accident employed as a "spell hand" at the defendant's rolling mill located at Duquesne in Allegheny county. His duty was to relieve at intervals the manipulator at the thirty-eight inch blooming mill. The manipulator operates the hydraulic lever that turns over the steel billets before they enter the rolls.

In the evening of March 19, 1904, Kearns was ordered by Causler, the foreman, to go down into the pit for the purpose of assisting in changing the rolls. This pit is about twenty feet long, five or six feet wide, and from twelve to fifteen feet deep. It is dark, and is described by the witness Gallagher as "a kind of a miserable place, greasy and all like that, and water pipes running past there." While Kearns had been employed for two years as a "spell hand" at these works, he had never entered the pit for the purpose of changing the rolls. As he was starting into the pit he said to the foreman, according to his testimony: "I don't know anything about it, I don't understand it." Kearns also said to the foreman: "You had better come down with me," to which the latter replied: "You had better go down, I will tell you what to do when you go down." He then described what occurred at the time and immediately before the accident as follows: "He [Causler] said to me, 'You go ahead.' And he handed me a torch, and I went on down in the pit, crawled back on the steelyard, and got on the weight, and he hollered down to me, 'Watch your head, I am going to throw down the chain to you.' He throwed the chain down. I asked him what I was to do with it. He said, 'You put that along the beam.' And I put it around the

beam, and I says, 'Am I all right here?' He says, 'Yes, you are all right.' Just at that he give the signal for the crane boy to go ahead. When he give the signal to the crane boy to go ahead, it took the weight up, and the beam overhead knocked me down, and I got my arm fastened between the steelyard beam and the beam above." Gallagher, a witness for the plaintiff testified that he was present at the time Kearns was directed to go into the pit and that Kearns said to the foreman, as he was entering the pit, that he did not know much about the job; also that Causler said to Kearns: "Go ahead down, what you don't know we will show you."

The pit work, as stated by the learned trial judge, consisted in placing a chain lowered from the crane over the end of the steelyard beam. This beam raised a heavy weight, and when the beam was raised to the top of the pit the plaintiff's duty was then to place a link over the end of the beam to hold it in place, thus releasing the rolls so that the change could be made. This work had to be done in the pit and by the aid of a torch which was carried by the person performing the service.

The negligence charged against the defendant company was the failure to instruct the plaintiff in the performance of his duties in the pit. The learned judge, however, held that the risks or dangers incident to the work to be done in the pit by the plaintiff were obvious, and such as would be apparent to any one exercising the care required under the circumstances. He, therefore, held that there was no duty resting on the defendant to give the plaintiff instruction how to perform his duties and to avoid the perils of the service in the pit, and directed a nonsuit.

It is true, as suggested by the learned court in the opinion refusing to take off the nonsuit, that the plaintiff had been employed about the mill for four years prior to the accident, but it is equally true and not disputed that he was never down in this pit and was never called upon to perform the duties required of him when he entered the pit on this occasion. He had relieved the manip-

ulator but that duty was performed on the floor and not in the pit. From his position on the floor, he may have seen part of the machinery in the pit, but as to how to do the work in the pit and avoid the dangers incident thereto he was entirely ignorant. The plaintiff recognized the danger as well as his own ignorance of the duties to be performed, and gave distinct notice to the foreman of the fact immediately before entering the pit. In anticipation of being employed at some future time to perform the service, the foreman advised the plaintiff that he ought to learn how to do the work at that time. He also said to him that he would tell him what to do when he got down in the pit. This was a recognition by the foreman of the ignorance of the plaintiff as to the performance of his duties and as to his knowledge of the risks to be encountered in doing the work. It was the duty of the company by its foreman or other representative to properly instruct the plaintiff before the latter entered the pit. This was doubly true in this case because the foreman was expressly notified by the plaintiff that he did not understand the work, and was requested to go into the pit with the plaintiff to instruct him in the performance of his duties. The dangers or perils to be encountered in the performance of the work in the pit, lighted only by a torch held in the hand of the laborer, cannot as a matter of law be declared to be the subject of common knowledge or apparent to ordinary observation. The conditions in the pit and the description by the plaintiff of the manner in which he had to perform the work do not leave that impression, and hence the case should have been submitted with proper instructions to the jury to determine whether under the circumstances disclosed by the testimony the defendant was negligent in failing to instruct the plaintiff, and if so whether such negligence was the cause of his injuries.

It is the duty of an employer not only to instruct an employee, ignorant of the dangers incident to his work by reason of age, inexperience or other causes, but also to

point out to him how those dangers may be avoided. It is true, as argued by the defendant, that the plaintiff was employed about the pit for two years, relieving at intervals the manipulator, and that from his position on the floor he could see the machinery in the darkness of the pit, but that gave him no instruction how to act when he entered the pit to perform his duties and how to avoid the risks or perils incident thereto. On cross-examination the counsel for the defendant asked the plaintiff: "And you knew that the steelyard was going to be raised until it was high enough for you to slip the link over, didn't you? A. I didn't think it was going to go that high." The plaintiff's ignorance of that fact caused his injury. He had had no experience in the work, he had not been instructed in regard to its performance, he did not know how high the steelyard should or would go, and it was neither apparent to ordinary observation nor was it the subject of common knowledge. The only person who would have such information would be he who had been informed of the fact or, by his experience working in the pit, would thereby have acquired the information. A careful reading of all the testimony has convinced us that it was a question for the jury and not for the court to determine whether the defendant company neglected its duty under the circumstances in not properly instructing the plaintiff as to the discharge of the duties to be performed in the pit. There is no question of fellow servant in the case.

The judgment is reversed, and a venire facias de novo awarded.