# Brown v. Armstrong & Latta Company, Inc., Appellant.

*Negligence—Contributory negligence—Master and servant—Vice principal—Case for jury.*

1. In an action by an employee against his employer to recover damages for personal injuries sustained through an alleged improper order given to plaintiff by one whom the latter claimed was a vice principal of his employer, the question as to whether such person was or was not a vice principal is for the jury, where the evidence shows that such person employed the plaintiff and others; that he was in general charge of the work and that after he had been told what to do, he went ahead without consulting others above him, and was responsible for what he and the men under him did.

2. In such a case the plaintiff's contributory negligence is for the jury where it appears that the plaintiff, an inexperienced colored man knowing nothing about unloading cars, was given an order to proceed in a great hurry to cut supports holding lumber on the cars, and that in cutting the supports, as ordered by defendant's superintendent, the lumber fell upon him and injured him; and it further appears that the method adopted of unloading the car was inherently dangerous.

*Evidence—Witness—Credibility.*

3. Although a witness may have suffered an illness which at times may have affected his mentality, his testimony will not be excluded if it appears that it was thoughtful, to the point, and consistent with other testimony in the case.

Argued Jan. 14, 1913. Appeal, No. 227, Jan. T., 1912, by defendant, from judgment of C. P. No. 1, Philadelphia Co., Dec. T., 1907, No. 5095, on verdict for plaintiff in case of Josiah Brown v. Armstrong & Latta Company, Incorporated. Before BROWN, MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before KINSEY, J.

At the trial it appeared that the plaintiff was em-

ployed by the defendant as a laborer on certain bridge work at Ocean City, New Jersey, and that on April 14, 1907, while unloading a car of lumber in obedience to an order, he was injured. The circumstances of the accident are stated in the opinion of the Supreme Court.

Plaintiff presented these points:

1. "It is the duty of the employer to provide reasonably safe instrumentalities for the employee in and about the particular work he is to do.

Answer: "That is true as a principle of law and I affirm it. (3)

2. "The servant is not required to act on his own judgment against that of his employer, and if the latter gives him positive instructions to go on with a particular task, he may recover for any injury received if the work was not imminently dangerous.

Answer: "That I affirm. (4)

3. "It is the duty of the employer to instruct the employee as to any latent defect or hidden danger.

Answer: "That I affirm. (5)

5. "It is the employer's absolute duty to see that his employees are supplied with reasonably safe instructions for the work they are given to do. He cannot relieve himself of responsibility by delegating this duty to another, when he delegates duty he must see to it, at his peril, that the duty is performed. Failure on the part of the representatives or substitutes because of disregard of instructions is the failure of the principal. (Authorities quoted, Carr v. General Fire Extinguisher Co., 224 Pa. 346; Groves v. McNeil, 226 Pa. 345; Franczak v. Nazareth Cement Co., 42 Pa. Superior Court 263.)

Answer: "I affirm that." (6)

The court charged in part as follows:

"If you find that Bob Beamer was acting specifically and directly in the nature of a vice principal, for defendant—that is, authorized to represent the principal and had entire authority, and was there superintending that work, and had knowledge of this danger, and that

knowledge, through him, was brought home to defendant, to make liability—if you find all those things after due and careful consideration, you will then approach the subject of damages, the amount of your verdict, if you should find for plaintiff." (7)

Verdict and judgment for plaintiff for $2,500. Defendant appealed.

*Errors assigned* among others were (3-7) above instructions quoting them.

*Frank P. Prichard,* with him *James Wilson Bayard,* for appellant.—A master who has provided suitable appliances is not responsible to his servants for damages arising in the course of the performance of the work and as the result of that work; as to such dangers the servant must look out for himself, and cannot claim damages from the master, even if the work which he does and which results in his injuries was ordered by the foreman of his gang: Durst v. Carnegie Steel Co., 173 Pa. 162; Hughes v. Leonard, 199 Pa. 123; Shank v. Illuminating Co., 225 Pa. 393; Carnegie v. Bridge Co., 197 Pa. 441; Miller v. Bridge Co., 216 Pa. 559; Martin v. R. R. Co., 166 U. S. 399 (17 Sup. Ct. Repr. 603).

A similar rule has been applied in New York in the case of Hussey v. Coger, 112 N. Y. 614 (20 N. E. Repr. 556); Schott v. Onondaga County Savings Bank, 49 N. Y. App. Div. 503 (63 N. Y. Supp. 631). In New Hampshire in the case of McLaine v. Head & Dowst Co., 71 N. H. 294 (52 Atl. Repr. 545). In California in Donovan v. Ferris, 128 Cal. 48 (60 Pac. Repr. 519). In New Jersey in Roco v. Gillespie, 73 N. J. Law 591 (64 Atl. Repr. 591); and in Wisconsin in the case of Strehlau v. John Schroeder Lumber Co., 142 Wis. 215 (125 N. W. Repr. 429).

The learned trial judge in his charge overlooked the distinction, which is abundantly illustrated in the decisions of this court, between the liability of a master for

the acts of his representative who is performing some duty which the master cannot delegate and his liability for the acts of the same man when he is performing a delegable duty: Ross v. Walker, 139 Pa. 42; Kinney v. Corbin, 132 Pa. 341; Duncan v. Roberts, 194 Pa. 563; Johnson v. Ry. Co., 200 Pa. 314; Staebler v. Warren-Ehret Co., 223 Pa. 129.

*H. D. Wescott,* of *Wescott, Wescott & McManus,* for appellee.—Where the master or superior places the entire charge of his business, or a distinct branch of it, in the hands of an agent or subordinate, exercising no discretion or oversight of his own, the master is held liable for the negligence of such agent or subordinate: Mullan v. Philadelphia, Etc., Steamship Company, 78 Pa. 25; N. Y., L. E. & W. R. R. Co. v. Bell, 112 Pa. 400; Prevost v. Ice & Refrigerating Co., 185 Pa. 617.

OPINION BY MR. JUSTICE MOSCHZISKER, March 17, 1913:

A shipment of lumber while being unloaded from a railroad car fell and injured the plaintiff, a laborer in the employ of the defendant corporation which was engaged in constructing the lumber and concrete portions of a bridge. The load was at least six feet high and consisted of long "stringers"; it was supported and kept in place by stanchions or uprights on both sides held together at the top by wires. At the direction of one Beamer the plaintiff cut certain of these supports, which caused the lumber to fall. The testimony shows that Beamer employed the plaintiff and others; that at first he sent him to another place to work but subsequently brought him to the location of the bridge; that he had charge of, superintended and directed the work of the plaintiff and his fellow-workmen prior to and at the time of the accident; and that he not only employed the men, but at least one had been discharged by him. A witness for the plaintiff testified that Beamer had charge of the

defendant's work at Ocean City where the bridge was
being constructed, that he was the "superintendent of
the bridge" who "gave the orders himself right straight
out"; and another who was employed on the job said
that Beamer had charge of and always directed the per-
formance of all his duties.   The defendant claimed that
Beamer was merely a gang boss without authority to
hire or discharge men and not in any sense a superin-
tendent; but the defendant's witness admitted that
Beamer was in a position where, after being told what
to do, he went ahead without consulting others above
him, and that he was responsible for what he and the men
under him did.   The question of Beamer's relation to the
defendant corporation was, therefore, for the jury, and
the issue was fairly submitted and found against the
defendant.

The questions remain, first, was there sufficient in the
testimony to show negligence on the part of the defend-
ant, and second, was the plaintiff clearly guilty of con-
tributory negligence?   The jury could have found from
the testimony that Beamer ordered several of the em-
ployees of the defendant company "to go to work in a
great big hurry"; that he said, "Hurry up, men, because
you have been down here all day and very near nothing
done"; that one of the men took an axe and cut certain
of the wires which held the supports of the lumber to-
gether; that at this time the plaintiff was "down the
track a piece......not more than fifty yards" when
"Beamer called him to this car" and said, "Go ahead and
get the axe and cut it"; the plaintiff replied, "Do you
mean me?" and Beamer said, "We have been here all day
and we have not anything done..`....go ahead and cut
them quick."   At that time all the supports but two had
been severed; the plaintiff took up his axe and cut one of
the remaining supports and "had cut one lick in the
other" when it gave way and the lumber fell.   The acci-
dent happened in April, 1907, at which time the plaintiff
was 34 years of age; he was an inexperienced colored

man who knew nothing about unloading cars, never having done work of that character before, and he was not given any instructions. Under the circumstances we feel that the plaintiff's cause falls within the rules governing cases where an employer gives orders for the prompt performance of work involving in its execution dangers to the employee, which dangers, while not obvious to the latter, the former knew or ought to have known and by the use of ordinary due care could have avoided; where the negligence consists in hurriedly ordering the employee without notice or instructions into a position of danger; and where the employee having been directed to perform the work quickly can be held to have acted on the judgment of his superior, upon the theory that a "servant is not called upon to set up his own unaided judgment against that of his superiors and may rely upon their advice and still more upon their orders," and that in such cases he is not "held to the standard of care which should be exacted when there is more time for observation and deliberation." (See Lee v. Woolsey, 109 Pa. 124, 126; Williams v. Clark, 204 Pa. 416, 418; Dougherty v. Dobson, 214 Pa. 252, 257; Stoiber v. Independent Brewing Co., 230 Pa. 210; Kearns v. Carnegie Steel Co., 230 Pa. 328, 330; Glew v. Pittsburgh Rys. Co., 234 Pa. 238, 243; Mapes v. Pittsburgh Provision & Packing Co., 31 Pa. Superior Ct. 453, 459; Reber v. Alsace Township, 49 Pa. Superior Ct., 465, 469; also 26 Cyc. 1173, 1235, 1245, 1273, and 1338.) We conclude that both the questions of the defendant's negligence and of the plaintiff's contributory negligence were for the jury, and we cannot say that the evidence was insufficient to support the findings comprehended by the verdict in favor of the plaintiff.

The credibility of the witnesses was not for the court, but after considering all that may justifiably be said concerning the principal witness for the plaintiff we are not convinced that his testimony should have been excluded; although there was evidence that this witness had suf-

fered an illness which may at times have affected his mentality, yet his deposition appears thoughtful, to the point and consistent with other testimony in the case. Nor do we feel that the fall of the lumber can properly be treated as a mere transitory danger incident to the labor which the plaintiff was employed to perform; the place where the plaintiff was working was converted into one of danger by the manner in which he and his fellow workmen were ordered to do the unloading; there is testimony in the case to the effect that the usual and customary way of unloading lumber from cars is by the use of skids, and from which the inference could be drawn that this was known to the defendant's representative in charge of the work, further, that the method pursued in response to the latter's orders was inherently dangerous.

The appellant assigns numerous excerpts from the charge, but when viewed as a whole it is apparent that no reversible error was committed in submitting the case to the jury; all the assignments are overruled and the judgment is affirmed.